*351 Judge ERDMANN
delivered the opinion of the Court.
Appellant Damage Controlman Fireman Apprentice (DCFA) Michael J. Henderson was charged with making a false official statement, willful damage to military property, willfully hazarding a vessel, wrongfully using marijuana, larceny of military property, and wrongful appropriation, in violation of Articles 107, 108, 110, 112a, and 121 of the Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 907-908, 910, 912a, and 921 (2000), respectively. The only charge at issue in this appeal is “willfully hazarding a vessel” in violation of Article 110.
Henderson was convicted by a military judge at a special court-martial of the lesser-included charge of negligently hazarding a vessel and other charges pursuant to his pleas, and sentenced to a bad-conduct discharge, confinement for five months, forfeiture of $500 pay per month for five months, and reduction to the lowest enlisted grade (E-l). Pursuant to the pretrial agreement, the convening authority approved the sentence as adjudged and suspended all confinement in excess of 51 days. The Navy-Marine Corps Court of Criminal Appeals affirmed the findings of guilty and the sentence in an unpublished opinion.
We granted review of the following issues pursuant to Article 67(b), UCMJ, 10 U.S.C. § 867(b) (2000):
I. WHETHER APPELLANT’S SPECIAL COURT-MARTIAL LACKED JURISDICTION TO TRY HIM FOR AN ALLEGED VIOLATION OF ARTICLE 110, UCMJ, A CAPITAL OFFENSE, WHERE THE SPECIAL COURT-MARTIAL CONVENING AUTHORITY REFERRED THE CHARGE TO A SPECIAL COURT-MARTIAL WITHOUT OBTAINING CONSENT FROM APPELLANT’S GENERAL COURT-MARTIAL CONVENING AUTHORITY.
II. WHETHER APPELLANT’S PLEA OF GUILTY TO NEGLIGENTLY HAZARDING A VESSEL WAS IMPROVIDENT.
We hold that the special court-martial lacked jurisdiction over the charge of willfully hazarding a vessel and the lesser-included charge of negligently hazarding a vessel, and therefore the findings related to the lesser-included offense of negligently hazarding a vessel are void. In light of this disposition, we do not reach Issue II.
FACTS
Henderson was stationed on board the USS TARAWA. He built an improvised explosive device out of urine sample tubes, crushed flare powder, electrical wires, oil and washers. According to Henderson, he intended to detonate the device onboard ship in order to commit suicide. He planned to detonate the device by inserting the wires into an electrical socket, which he believed would heat the wires and ignite the flare powder thereby causing a chain reaction which would expel the burning oil and washers. After Henderson built the device he placed it in a box which he taped shut and stored in the fan room onboard ship. Before he could initiate his suicide plan, the device was discovered and removed.
The charges against Henderson, including the charge of willfully hazarding a vessel in violation of Article 110, were referred to a special court-martial by the commanding officer of the USS TARAWA, an officer who exercised only special court-martial jurisdiction. Henderson entered into a plea agreement in which he agreed to plead guilty to, inter alia, the lesser-included offense of negligently hazarding a vessel. The charge of willfully hazarding a vessel, however, was not dropped from the charge sheet and the lesser-included offense was not referred separately. The military judge conducted a providence inquiry after which Henderson was convicted of those charges to which he had pleaded guilty and was acquitted of the charges to which he had pleaded not guilty, including the offense of willfully hazarding a vessel.
DISCUSSION
The jurisdiction of a special court-martial over a non-mandatory capital offense *352 is a legal question which we review de novo. See United States v. Melanson, 53 M.J. 1, 2 (C.A.A.F.2000)(in personam jurisdiction).
The elements of Article 110, “improper hazarding of vessel,” are “(1) [tjhat a vessel of the armed forces was hazarded in a certain manner; and (2) [tjhat the accused by-certain acts or omissions, willfully and wrongfully, or negligently, caused or suffered the vessel to be hazarded.” Manual for Courts-Martial, United States (2002 ed.) [.MCM], Part IV, para. 34.b. Willfully hazarding a vessel is a non-mandatory capital offense, punishable by “[djeath or such other punishment as a court-martial may direct.” Id. at Part IV, para. 34.e. Negligently hazarding a vessel is a lesser-included, noncapital offense, punishable by “[djishonorable discharge, forfeiture of all pay and allowances, and confinement for 2 years.” Id.
Article 19, UCMJ, 10 U.S.C. § 819 (2000) “jurisdiction of special courts-martial,” provides in pertinent part: “[Sjpecial courts-martial have jurisdiction to try persons subject to this chapter for any noncapital offense made punishable by this chapter, and, under such regulations as the President may prescribe, for capital offenses.” Rule for Courts-Martial 201(f)(2)(C) [R.C.M.j, a regulation prescribed by the President, withholds jurisdiction over mandatory capital eases from special courts-martial, but does provide for jurisdiction over non-mandatory capital offenses under two circumstances: (1) when permitted by an “officer exercising general court-martial jurisdiction over the command which includes the accused”; and (2) when authorized by regulation by the Secretary concerned. R.C.M. 201 (f) (2) (C) (ii)-(iii). There is neither evidence nor argument that either of the exceptions in R.C.M. 201(f)(2)(C) applied in Henderson’s case.
The Government argues that despite the lack of permission under R.C.M. 201(f)(2)(C)(ii) or (iii), the special court-martial had jurisdiction in this case because: (1) the convening authority “functionally” referred the charge of negligently hazarding the USS TARAWA when Henderson entered into the pretrial agreement; (2) even if this Court were to find that the pretrial agreement was not the functional equivalent of a formal referral, the lesser-included charge was still implicitly referred to the special court-martial when the convening authority referred the capital charge; and, in any event, (3) the failure to obtain the permission of the officer exercising general court-martial jurisdiction over an accused prior to referring a capital offense is a nonjurisdictional, procedural defect which is forfeited if not raised at trial.
We will first address the Government’s argument that the referral of a non-mandatory capital offense to a special court-martial without first securing permission from the officer exercising general court-martial jurisdiction over the accused is a nonjurisdietional, procedural defect, as that issue is largely dispositive of the remaining issues.
1. Nonjurisdictional Procedural Defect
The Government asks us to find that the error here was a nonjurisdictional procedural defect and urges us to overrule United States v. Bancroft, 3 C.M.A. 3, 11 C.M.R. 3 (1953). Bancroft was a Korean War case where the accused had been charged with violation of Article 113, UCMJ, 10 U.S.C. § 913 (2000) for sleeping at his post. A conviction for violation of Article 113 during time of war was (and still is) punishable “by death or such other punishment as a court-martial may direct.” The charges were referred to a special court-martial which found Bancroft guilty and sentenced him to a bad-conduct discharge, forfeiture of $30 a month for six months, and confinement for six months.
A Navy board of review[1] held that because a violation of Article 113 could be punished by death when committed in time of war and because the offense occurred in Korea during wartime, the case was capital and the special court-martial had no jurisdiction. The Judge *353 Advocate General of the Navy certified that issue to this Court which analyzed the limited jurisdiction of special courts-martial under Article 19, and paragraph 15 of the MCM (1951 ed.).[2] This Court noted that neither the officer exercising general court-martial jurisdiction nor the Secretary of the Navy had authorized the referral and held that the special court-martial did not have jurisdiction to try the non-mandatory capital offense of sleeping at a post during wartime in violation of Article 113. The special court-martial’s findings and sentence on that charge were therefore void. Bancroft, 3 C.M.A. at 11, 11 C.M.R. at 11.
The Government does not challenge the validity of the Bancroft holding on legal grounds, but rather argues that several of our more recent decisions characterizing certain forms of error in the referral process as nonjurisdictional have eroded its continued validity. The Government points to our decision in United States v. Jeter, 35 M.J. 442, 447 (C.M.A.1992), where we found that the failure of a general court-martial convening authority who was also an accuser to forward charges to the next higher level for referral was nonjurisdictional error. See also United States v. Shiner, 40 M.J. 155, 157 (C.M.A.1994). Similarly, the Government points to our decision in United States v. Kohut, 44 M.J. 245, 250 (C.A.A.F.1996), where we found the referral of charges to a special court-martial in violation of a service policy to be nonjurisdictional error.
Even if we were to assume that our decisions in Jeter and Kohut represent some form of “evolution” in the law applicable to jurisdictional defects in the referral process, that “evolution” does not extend so far as to alter the logic and holding in Bancroft. None of the cases relied on by the Government involves the factors common to both Bancroft and the present case — the referral of a capital charge to a special court-martial without authorization from the officer exercising general court-martial jurisdiction over the accused or from the Secretary of the Navy.
The situation in the present case is strikingly similar to Bancroft, and we take this occasion to reaffirm our holding in that case. As in Bancroft, the officer making the referral here exercised only special court-martial jurisdiction and referred a capital charge to a special court-martial without the authorization to do so. We therefore find that the court-martial in the present case lacked jurisdiction over the capital charge of willfully hazarding a vessel.
2. The Functional Equivalent of a Referral
The Government goes on to argue that even if there was no jurisdiction over the charge of willfully hazarding a vessel, when the special court-martial convening authority entered into a plea agreement with Henderson, in which Henderson agreed to plead guilty to the lesser-included charge of negligently hazarding a vessel, that agreement became the “functional equivalent” of a referral authorized under R.C.M. 601. The Government therefore asserts that the plea agreement was essentially a new referral of the lesser-included charge of negligently hazarding a vessel, a charge which the commanding officer of the USS TARAWA was authorized to refer as a special court-martial convening authority.
The Government looks to our decision in United States v. Wilkins, 29 M.J. 421 (C.M.A.1990), for support of its position. In Wilkins, the accused was charged with larceny but entered into a pretrial agreement with the special court-martial convening authority in which he agreed to plead guilty to receiving stolen property. The offense of receiving stolen property was not included in the original referral of charges, nor is it a lesser-included offense to the offense of larceny. This Court concluded that the pretrial agreement between Wilkins and the convening authority was the functional equivalent of a referral of the charge and specifications of receiving stolen property. Id. at 424.
In Wilkins, however, the convening authority had the authority to refer both the *354 larceny and receiving stolen property charges to the special court-martial, and the court-martial had subject matter jurisdiction over the offenses. The Court’s decision was based on the rationale that while a referral is a jurisdictional prerequisite, the form of the referral is not jurisdictional. Id. The unusual form of the referral was therefore a nonjurisdictional irregularity in the trial process. Id. at 424-25.
The Government’s reliance on Wilkins is misplaced. The case before us involves a challenge to the jurisdiction of a special court-martial to try a non-mandatory capital offense in the absence of authorization from either the officer exercising general court-martial jurisdiction over the accused or from the Secretary of the Navy — it is not simply a challenge to the “form” of the referral. Under the circumstances found in this ease, the special court-martial lacked jurisdiction ab initio. “[W]hen a criminal action is tried before a court which does not have jurisdiction, the entire proceedings are a nullity.”[3] Bancroft, 3 C.M.A. at 11, 11 C.M.R. at 11.
The primary distinction between this case and Bancroft is that Henderson was not convicted of a capital offense but only of a noncapital, lesser-included offense. That distinction, however, does not change the result. Because the offense of negligently hazarding a vessel never achieved the status of an independent charge, the court’s jurisdiction over it derived only from the improperly referred capital offense of willfully hazarding a vessel, and thus rises and falls with the jurisdiction over the greater offense. To recognize the pre-trial agreement in this case as the “functional equivalent” of a new referral would require this Court to find jurisdiction where it does not otherwise exist. This we cannot do.
3. Implicit Referral
The Government alternatively argues that when the special court-martial convening authority referred the charge of willfully hazarding a vessel to the special court-martial, it implicitly referred the lesser-included offense of negligently hazarding a vessel at the same time, under the general principles of notice pleading. The Government relies primarily on our statement in United States v. Virgilito, 22 C.M.A. 394, 396, 47 C.M.R. 331, 333 (1973), that a lesser-included offense does not have to be independently referred if the allegations “fairly embrace the elements of the lesser offense and thus give adequate notice to the accused of the offenses against which he must defend.” Id.
Virgilito does not control the outcome here because it did not involve any defect in the court’s jurisdiction over the originally preferred charge. Henderson’s special court-martial had no jurisdiction to try a capital charge without authorization from either the officer exercising general court-martial jurisdiction over the accused or from the Secretary of the Navy. Since the lesser-included charge of negligently hazarding a vessel was never formally referred under R.C.M. 601, it was dependent on the greater charge and was fatally tainted by the lack of jurisdiction.
For all these reasons, Henderson’s conviction for negligently hazarding a vessel cannot stand.
DECISION
The decision of the United States Navy-Marine Corps Court of Criminal Appeals as to Charge III and the sentence is reversed, but is affirmed in all other respects. The finding of guilty of Charge III and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy for remand to the Court of Criminal Appeals. That court may either dismiss Charge III and reassess the sentence based on the affirmed guilty findings or order a rehearing.

. The term "board of review" was replaced by "Court of Military Review” in 1968. Military Justice Act of 1968, Pub.L. No. 90-632, § 25, 82 Stat. 1335, 1341 (1968). That term was in turn replaced by "Court of Criminal Appeals" in 1994. National Defense Authorization Act for Fiscal Year 1995, Pub.L. No. 103-337, § 924(b), 108 Stat. 2663, 2831 (1994).

. MCM (1951 ed.) paragraph 15 is the predecessor to R.C.M. 201(f)(2). The limitations and exceptions with regard to jurisdiction over capital cases are unchanged.

. In Bancroft the only charge was the jurisdictionally-defective capital charge. Jurisdiction over a charge unrelated to a jurisdictionallydefective charge or a lesser-included offense of the unrelated charge remains valid. Only the finding and sentence related to the defective charge are a nullity.