# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.R. MCFARLANE, M.C. HOLIFIELD, K.J. BRUBAKER**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**JOHN C. AVERELL**
**CHIEF HOSPITAL CORPSMAN (E-7), U.S. NAVY**

**NMCCA 201300471**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged**: 29 July 2013.
**Military Judge**: CDR John A. Maksym, JAGC, USN.
**Convening Authority**: Commander, U.S. Naval Forces Japan, Yokosuka, Japan.
**Staff Judge Advocate's Recommendation**: CDR T.D. Stone, JAGC, USN.
**For Appellant**: LT Jennifer L. Myers, JAGC, USN.
**For Appellee**: Capt Matthew M. Harris, USMC; LT Ann Dingle, JAGC, USN.

**6 November 2014**

---
## OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

HOLIFIELD, Judge:

At his general court-martial, the appellant entered mixed pleas. Consistent with his pleas, he was convicted of violating a lawful general order (fraternization) and adultery, in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934. Contrary to his pleas, he was convicted by a panel of officer and enlisted members of sexual assault by placing the victim in fear, in violation of

Article 120, UCMJ, 10 U.S.C. § 920.  The appellant was acquitted of engaging in sexual harassment in violation of a lawful general order.  The members sentenced the appellant to 90 days' confinement, reduction to pay grade E-1, and a bad-conduct discharge.  The convening authority (CA) approved the sentence as adjudged.  There was no pretrial agreement.

The appellant raises seven assignments of error:  First, that the officer who convened the court and referred the charges to it was without jurisdiction to do so; second, that the evidence of sexual assault was legally and factually insufficient; third, that the military judge's exclusion of evidence regarding the victim's simultaneous romantic relationships with two other Sailors denied the appellant his right to confrontation under the Sixth Amendment; fourth, that the record of trial is neither complete nor verbatim; fifth, that the military judge improperly excluded evidence that the appellant had previously treated the victim for a sexually transmitted disease (STD); sixth, that the military judge's exclusion of evidence regarding the victim's purported interest in having sex with a "yet undetermined person" shortly before the sexual assault denied the appellant his right to confrontation under the Sixth Amendment; and, seventh, that comments of senior Navy and Department of Defense personnel constituted unlawful command influence.[1]

After carefully considering the record of trial and the submissions of the parties, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.  Arts. 59(a) and 66(c), UCMJ.

## Background

The appellant was an independent duty corpsman and duty section leader onboard a barge attached to the USS GERMANTOWN (LSD 42).  The top ranked chief petty officer on the ship, he was a mentor to numerous Sailors, including Quartermaster Seaman (QMSN) IA.  QMSN IA was, by her own description, a "troubled Sailor."  Loud, impulsive, and a marginal performer, she had received numerous counseling sessions and had been called before the ship's Disciplinary Review Board more than once.  On most, if not all, of these occasions, the appellant acted as QMSN IA's protector, successfully helping her avoid punishment.

---

[1] The sixth and seventh assignments of error are raised pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982).

On 20 October 2012, while attending an event off the ship, the appellant received a call that QMSN IA had fallen down a ladder and was refusing to be examined by anyone other than the appellant.  QMSN IA had attended a shipmate's birthday party that day and testified that she had become intoxicated.[2]  Before he could return to the barge, he received a second call to report that QMSN IA had allegedly kicked and unmade another Sailor's rack in berthing.  When the appellant arrived at the barge, he learned that QMSN IA had been loud, profane, and disrespectful when she returned to the barge earlier that evening.

Finding QMSN IA in the medical office, the appellant conducted a medical exam and detected no injuries.  (Between the time the appellant received the first phone call and his arrival back at the barge, QMSN IA had fallen down a second ladder.)  During the examination, QMSN SA continually voiced her concern that she was in trouble, but never articulated the basis for this fear.  The appellant assured her several times that she was not in trouble.

Ostensibly concerned about QMSN IA's health, the appellant informed the medical officer that he would keep an eye on her. The appellant then took QMSN IA to the Chiefs' Mess.  Once there, the appellant spoke with another chief, the only other person in the space, and stated that he wanted to speak with QMSN IA alone in the hope she would open up and discuss the incident in berthing.  While the appellant and the other chief were talking, QMSN IA sent a text message to Fire Controlman Second Class (FC2) L, saying "OK, in chiefs mast [sic].  Help me."[3]  She then left the Chiefs' Mess without the appellant's knowledge.

The appellant then went to female berthing to investigate the rack incident.  Once there, he observed QMSN IA and the aggrieved rack-owner engage in a heated argument over the earlier incident in berthing.  The appellant told QMSN IA to step out of the berthing spaces.  He reassured her that she would not be in trouble over such minor allegations.

At this point, the description of events provided by the appellant and QMSN IA significantly diverge.  The appellant testified at trial that QMSN IA followed him unbidden to the dental office.  He claimed that, once there, QMSN IA kissed him

---

[2] Record at 808.

[3] Prosecution Exhibit 1.

3

and removed her clothes—all to his great surprise. He testified that they then engaged in consensual sex for a brief time before he stopped the activity. QMSN IA, however, testified that the appellant took her to the dental office, told her she was "in trouble" and she knew "what [she] needed to do."[4] She then acquiesced to having sex, fearing her heretofore protector and mentor would not save her from disciplinary action this time. She further testified that she feared what the appellant might do in retaliation if she refused his request for sex, as no one would take her word over his.

Within minutes of leaving the dental office, QMSN IA reported the incident to shipmates, who alerted the chain of command. The ensuing investigation revealed physical evidence that tended to support QMSN IA's version of events over the appellant's, including the presence of semen on the victim despite the appellant's testimony that he wore a condom and did not ejaculate.

Other facts necessary to address the assigned errors will be provided below.

### Authority to Convene or Refer

Jurisdiction "'is a legal question which we review *de novo*.'"[5] For a court-martial to have jurisdiction, it "must be convened by an official empowered to convene it."[6] Article 22, UCMJ, lists those persons so empowered, including "any other commanding officer designated by the Secretary concerned." The Manual of the Judge Advocate General designates as officers empowered to convene general courts-martial "[a]ll flag or general officers, *or their immediate temporary successors, in command* of units or activities of the Navy or Marine Corps." (Emphasis added).[7]

---

[4] Record at 831.

[5] *United States v. Harmon*, 63 M.J. 98, 101 (C.A.A.F. 2006) (quoting *United States v. Henderson*, 59 M.J. 350, 352 (C.A.A.F. 2004)).

[6] RULE FOR COURTS-MARTIAL 201(b)(1), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).

[7] Judge Advocate General Instruction 5800.7F § 0120(a)(1) (26 June 2012) (JAGMAN). The JAGMAN is approved under the authority of the Secretary of the Navy and contains regulations for the Department of the Navy authorized by 5 U.S.C. § 301 (Authority to Issue Departmental Regulations), the UCMJ, and the Manual for Courts-Martial.

4

Article 1026, U.S. Navy Regulations (1990) states that "[a]n officer who succeeds to command . . . has the same authority and responsibility as the officer whom he or she succeeds." Additionally, when such officers sign official correspondence, "the word 'Acting' shall appear below his or her signature."

Here the charges were referred for trial by general court-martial by "T. C. Faller" on 4 April 2013. The same person signed the General Court-Martial Amending Order on 19 July 2013. On both documents, the word "Acting" follows the signature.

As the appellant did not raise this issue at trial, the only evidence before us regarding the status of T.C. Faller on these dates is the sworn affidavit of the Deputy Force Judge Advocate (DFJA) for Commander, U.S. Naval Forces Japan (CNFJ).[8] In her affidavit, the DFJA explains that the Commander was absent from the CNFJ area of responsibility on 4 April and 19 July 2013 (on temporary additional duty and leave, respectively); and, that the CNFJ Chief of Staff, Captain T. C. Faller, succeeded to command on both occasions. The appellant offers no evidence to the contrary, and there is nothing on the face of either the amending order or the charge sheet that indicates an irregularity or defect.[9] We, therefore, find Captain Faller was empowered to refer the charges for trial by court-martial and to sign the General Court-Martial Amending Order.

**Legal and Factual Sufficiency**

We review questions of legal and factual sufficiency *de novo.*[10] The test for legal sufficiency is whether any rational trier of fact could have found that the evidence met the essential elements of the charged offenses, viewing the evidence in a light most favorable to the Government.[11] The test for factual sufficiency is whether we are convinced of the appellant's guilt beyond a reasonable doubt, allowing for the

---

[8] Appellee's Consent Motion to Attach, granted 22 Aug 2014.

[9] *See United States v. Leahy*, 20 M.J. 564, 565-66 (N.M.C.M.R. 1985) (court presumed regularity in the absence of any defect or irregularity on the face of amending order).

[10] *United States v. Washington,* 57 M.J. 394, 399 (C.A.A.F. 2002).

[11] *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987).

fact that we did not personally observe the witnesses.[12]  Here, we find in the affirmative on both tests.

The appellant was charged with "penetrating the vagina of I.A. with his penis, by placing her in fear of abuse of military position."  Article 120(g)(7), UCMJ, defines "threatening or placing that other person in fear" as "a communication or action that is of sufficient consequence to cause a reasonable fear that non-compliance will result in the victim or another person being subjected to the wrongful action contemplated by the communication or action."[13]

There is no claim that QMSN IA did not genuinely, subjectively fear repercussions had she declined the appellant's request.  Rather, the appellant claims the evidence on this Charge is legally and factually insufficient in that QMSN IA's fear was not objectively reasonable.[14]

To address the appellant's claim, we look at whether a reasonable person would have been in fear of being subjected to the appellant's implied actions.  QMSN IA testified that, once in the dental office, the appellant's demeanor became "serious" and "aggressive"; he had never acted that way with her before.[15] The appellant, a respected chief and trusted mentor who had previously always acted to protect her, told QMSN IA that she was in trouble, and that she knew "what [she] needed to do."[16] An objective review of these statements and circumstances would lead a reasonable person to understand the meaning of these statements – that his protection would now come at a price - and to fear that refusal would bring negative consequences.

---

[12] *Id.* at 325.

[13] *See also* MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 45(g)(7).

[14] In support of this, the appellant points to QMSN IA's statements that her "fear was not reasonable at all," and that she "should not have believed [the appellant]".  Record at 891, 974.  That QMSN IA now, in sober hindsight, believes that she had other options available to her (such as leaving the dental office when she felt threatened), and that she likely would not have been "in trouble" for her actions earlier that night, does not change the facts of what happened in the dental office.  While her intoxication may have negatively affected her decision making in response to the fear, it does not change the objective reasonableness of that fear.  Regardless, whether the fear was objectionably reasonable was a question for the members (and is now for this court) to decide, not QMSN IA.

[15] *Id.* at 830-31.

[16] *Id.* at 831.

6

Accordingly, after carefully reviewing the record of trial and considering the evidence in the light most favorable to the Government, we are convinced that a reasonable trier of fact could have found all the essential elements beyond a reasonable doubt. Furthermore, after weighing all the evidence in the record and having made allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt of the appellant's guilt.

**Exclusion of Evidence**

We combine our analysis of the appellant's third, fifth and sixth assignments of error, as they all challenge the military judge's decisions to exclude evidence under MILITARY RULE OF EVIDENCE 412, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). We review the military judge's ruling on whether to exclude evidence pursuant to MIL. R. EVID. 412 for an abuse of discretion.[17] We review the findings of fact under a clearly erroneous standard and the conclusions of law *de novo*.[18] The abuse of discretion standard "recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range."[19]

Under MIL. R. EVID. 412, evidence offered by the accused to show that the alleged victim engaged in other sexual behavior is inadmissible, with three limited exceptions.[20] The third exception states that the evidence is admissible if "the exclusion of [it] would violate the constitutional rights of the accused."[21] If there is a theory of admissibility under one of the exceptions, the military judge, before admitting the evidence, must conduct a balancing test as outlined in MIL. R. EVID. 412(c)(3) and clarified by *United States v. Gaddis*, 70 M.J. 248, 250 (C.A.A.F. 2011).

The test is whether the evidence is "relevant, material, and [if] the probative value of the evidence outweighs the

---

[17] *United States v. Roberts*, 69 M.J. 23, 26 (C.A.A.F. 2010).

[18] *Id.*

[19] *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (internal quotation marks and citations omitted).

[20] MIL. R. EVID. 412(b)(1)(A-C).

[21] MIL. R. EVID. 412(b)(1)(C).

7

dangers of unfair prejudice."[22]  Relevant evidence is any
evidence that has "any tendency to make the existence of any
fact . . . more probable or less probable than it would be
without the evidence."[23]  Evidence is material if it is "of
consequence to the determination of appellant's guilt[.]"[24]

> In determining whether evidence is of consequence to
> the determination of Appellant's guilt, we consider
> the importance of the issue for which the evidence was
> offered in relation to the other issues in this case;
> the extent to which this issue is in dispute; and the
> nature of the other evidence in the case pertaining to
> the issue.[25]

If evidence is relevant and material, it must be admitted
where its probative value outweighs the dangers of unfair
prejudice.[26]  Those dangers include "'harassment, prejudice,
confusion of the issues, the witness' safety, or interrogation
that is repetitive or only marginally relevant.'"[27]  If the
evidence survives the inquiry, a final consideration is whether
the "evidence in the record support[s] [the] inference" on which
the moving party is relying.[28]

Among the constitutional rights that may support the
admission of evidence under MIL. R. EVID. 412's third exception is
the Sixth Amendment right to confrontation.[29]  This right
includes the ability to cross-examine and to impeach or
discredit a witness.[30]  This cross-examination, however, need not

---

[22] *United States v. Ellerbrock*, 70 M.J. 314, 318 (C.A.A.F. 2011) (citation omitted).

[23] MIL. R. EVID. 401.

[24] *United States v. Dorsey*, 16 M.J. 1, 6 (C.M.A. 1983) (citations and internal quotation marks omitted).

[25] *United States v. Smith*, 68 M.J. 445, 448 (C.A.A.F. 2010) (citation and internal quotation marks omitted).

[26] *See* MIL. R. EVID. 412(c)(3).

[27] *Ellerbrock,* 70 M.J. at 319 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

[28] *Id.*

[29] *Id.* at 318.

[30] *Id.*

be "'in whatever way, and to whatever extent, the defense might wish[,]'"[31] and the military judge may limit the scope of such cross-examination when its relevance is outweighed by concerns of harassment, prejudice, or confusion of the issues.[32]

**a. QMSN IA was motivated to fabricate her allegations in order to protect her romantic relationship with FC2 L.** The appellant alleges that he "should have been permitted to elicit from QMSN IA that she had an ongoing romantic relationship with FC2 [L] that was important to her, and that could have been damaged by engaging in consensual sex with" the appellant.[33] In support of that argument the appellant cites to United States Supreme Court case of *Olden v. Kentucky,* 488 U.S. 227 (1988). [34]

The alleged victim in *Olden* claimed that she was sexually assaulted by the accused and then dropped off in front of a home owned by a man named Russell. Although both the alleged victim and Russell were married and living with other people, they were involved in an extramarital affair at the time, and later moved in with one another.[35] The accused's theory was that the alleged victim made up the rape charges to "protect her relationship with Russell, who would have grown suspicious upon seeing her disembark from [the] car. . . . Over [Olden's] vehement objections, the trial court nonetheless granted the prosecutor's motion *in limine* to keep all evidence of [the alleged victim's] and Russell's living arrangement from the jury."[36] The court found that this ruling violated Olden's Sixth Amendment right to confrontation.[37]

In the present case, the appellant's trial defense counsel did not articulate their theory of admissibility with any great clarity, and the military judge never squarely ruled on whether

---

[31] *Id.* (quoting *Van Arsdell,* 475 U.S. at 679) (additional citation omitted).

[32] *Id.* at 319 (citing *Van Arsdell*, 475 U.S. at 679).

[33] Appellant's Brief of 13 May 2014 at 42.

[34] Although *Olden* did not involve application of Kentucky's Rape Shield law, our superior court has nonetheless applied *Olden* to cases involving the exclusion of evidence pursuant to MIL. R. EVID. 412. *See United States v. Williams*, 37 M.J. 352, 354 (C.M.A. 1993).

[35] *Olden*, 488 U.S. at 229-30.

[36] *Id*. at 230.

[37] *Id*. at 233.

the defense could elicit evidence to show that QMSN IA's relationship with FC2 L created a potential motive for her to fabricate the rape allegation. It appears defense counsel interpreted the military judge's rulings to preclude this, as they did not address the matter in their cross-examination of QMSN IA. However, we need not decide on this limited record whether *Olden* is applicable. Assuming, without deciding, that the military judge abused his discretion, we conclude that any such error was harmless beyond a reasonable doubt.

The appellant's inference that QMSN IA had a motive to fabricate an assault allegation in order to cover for consensual sex with the appellant is simply unsupported, if not outright contradicted, by the evidence in the record. There was no evidence whatsoever to indicate QMSN IA felt compelled to lie in order to preserve her relationship with FC2 L. The appellant offered nothing to show FC2 L was a jealous man; rather, QMSN IA testified that FC2 L was aware that she was also dating another Sailor at the time of the assault. Neither was there evidence that FC2 L was suspicious of QMSN IA's time with the appellant on the night in question. To the contrary, her communications with FC2 L earlier that evening involved a text message indicating she was afraid of the appellant, not that there was a possibility of a consensual sexual encounter she would later need to conceal. Finally, there was no evidence FC2 L observed QMSN IA in a compromising situation that may have required a fabricated explanation. FC2 L was not on the barge; he only learned of the sexual activity when QMSN IA reported the assault to him and another friend within minutes of it occurring.

Had evidence of the relationship been before the members, there is no reasonable possibility it would have affected the verdict. Accordingly, we find this assignment of error does not warrant relief.

**b. The appellant had previously treated QMSN IA for an STD.** The appellant claims this evidence was constitutionally required to impeach QMSN IA's testimony that the appellant had made her uncomfortable by discussing sexual topics with her. We disagree. The military judge did not preclude mention of the medical treatment or related discussions; his ruling was only that "the letters S-T-D" not be mentioned.[38] When the military judge ruled that "it is enough to say [the discussion of sexual matters] was . . . connected with medical care," defense counsel

---

[38] Record at 1521.

replied, "I'm fine with that."[39]  Furthermore, when the members subsequently questioned the appellant regarding gynecological care he provided to QMSN IA, the military judge admitted evidence that the appellant "would have participated with her in a degree of commentary . . . about proper care as it relates to one's private life[.]"[40]  That the treatment may have involved an STD is of no additional probative value, and would only have served to unfairly harass QMSN IA or prejudice the jury against her.[41]

**c. QMSN IA had shown interest in having sex with a "yet undetermined person" shortly before the sexual assault.**  Prior to trial, the defense provided notice of its intent to offer testimony of a Sailor to show that, at a party earlier on the day in question, QMSN IA had "flashed" her breasts and indicated a general willingness to engage in a sexual encounter.  The appellant was not aware of this conduct at the time of the sexual assault.  This purported evidence of QMSN IA's "sexual predisposition" is precisely the type of propensity evidence barred by MIL. R. EVID. 412, and the military judge did not abuse his discretion in precluding its admission.

### Record Completeness

The appellant next claims that the record is not a verbatim transcript of the proceedings, in that the military judge failed to adequately summarize a RULE FOR COURTS-MARTIAL 802, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) conference.  The completeness of a record of a trial is reviewed *de novo*.[42]

The Court of Appeals for the Armed Forces and its predecessor have long held that Article 54 requires only that transcripts be "substantially verbatim."[43]  Furthermore, "[i]nsubstantial omissions from a record of trial do not raise a presumption of prejudice or affect that record's characterization as a complete one."[44]  "If the record is

---

[39] *Id.*  While this affirmative agreement by counsel likely constitutes waiver of the issue, we assume for the purpose of this analysis that it does not.

[40] *Id.* at 1524 (ellipses in original).

[41] *See Smith,* 68 M.J. 448-49 (holding specific details of alleged victim's sexual past were not necessary to support a claim of fabrication when general language would suffice).

[42] *United States v. Henry,* 53 M.J. 108, 110 (C.A.A.F. 2000).

[43] *United States v. Lashley,* 14 M.J. 7, 8 (C.M.A. 1982).

[44] *Henry,* 53 M.J. at 111.

sufficiently complete to permit reviewing agencies to determine with reasonable certainty the substance and sense of the question, answer or argument, then prejudice is not present."[45]

While conferences conducted pursuant to R.C.M. 802 need not be recorded, any matters agreed upon at such conferences must be included in the record.[46] Failure of a party to object at trial to a failure to comply with this requirement waives the matter.[47]

Here, when the issue of whether the appellant had treated QMSN IA for an STD first arose, the military judge placed the court in recess and directed counsel to meet in his chambers. Before doing so, he stated his concern that evidence of "treatment along the lines [of] something of an intimate nature" goes directly to the allegation of sexual harassment.[48] Once back on the record, the military judge summarized the R.C.M. 802 conference as follows:

> I had a chat with counsel in chambers relative to a matter that just came up during direct examination during which it was illustrated to the court that, at least, some of the previously alleged commentary heard by the government in support of Charge I, Specification 1, might well have a nexus with actual treatment. A matter in which the court had not been previously advised of which the government knew or should have known took place.[49]

When asked if they agreed with his summary, both trial counsel and defense counsel answered in the affirmative. Trial counsel then moved to withdraw from Charge I, Specification 1, the language "asking her inappropriate sexual questions and."

The appellant asserts that the military judge's decision to exclude any mention of whether QMSN IA had an STD was a direct result of this R.C.M. 802 session. We disagree. There is no indication that any rulings were made during that off-the-record conference. There is, however, a later discussion of the STD

---

[45] *United States v. Nelson,* 13 C.M.R. 38, 42 (C.M.A. 1953).

[46] R.C.M. 1103(b)(2)(B), Discussion; R.C.M. 802(b).

[47] R.C.M. 802(b).

[48] Record at 1408.

[49] *Id.* at 1409.

issue *on the record* at the point the military judge made his ruling.[50]  Thus, we are not left to wonder at the military judge's ruling or its accompanying rationale.  Assuming, *arguendo*, that the issue was not waived by defense counsel's affirmative concurrence[51] with the military judge's summary, we still find this assignment of error to be without merit.

## Unlawful Command Influence

The appellant's final assignment of error is that the judge's remedy of five[52] additional peremptory challenges failed to cure the appearance of UCI created by comments of senior civilian and military leaders.  Based upon a thorough review of the extensive *voir dire* in this case, notable for the military judge's liberal granting of challenges for cause, we find that the military judge's remedy was sufficient, and that this assignment of error is without merit.[53]

## Error in CA's Action

The CA's action erroneously reflects that the adjudged sentence included total forfeitures, and that the appellant was entitled to "zero (5) days" judicially-ordered confinement credit.  There is nothing in the record to indicate any purported adjudged forfeitures were enforced, or that the appellant did not receive the five days' credit.  The appellant raises no error, and we find no prejudice.  However, the appellant is entitled to accurate court-martial records.[54]  Accordingly, we order the necessary corrective action in our decretal paragraph.

## Conclusion

The findings and the sentence as approved by the convening authority are affirmed.  The supplemental court-martial order shall reflect that the adjudged sentence did not include

---

[50] *Id*. at 1521.

[51] *Id*. at 1408-09.

[52] At the conclusion of *voir dire*, the military judge reconsidered the need for such a robust remedy and reduced the number of additional challenges to one.

[53] No further discussion is merited.  *United States v. Matias,* 25 M.J. 356, 363 (C.M.A. 1987).

[54] *United States v. Crumpley*, 49 M.J. 538, 539 (N.M.Ct.Crim.App. 1998).

forfeitures, and that the appellant is entitled to five days'
credit against confinement.

For the Court

R.H. TROIDL
Clerk of Court