UNITED STATES, Appellee

v.

Michael A. BATCHELDER Aviation
Electronics Technician Third
Class U.S. Navy, Appellant.

No. 94–6002.
CMR No. 9400483.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 4, 1994.

Decided Nov. 10, 1994.

For Appellant: *Lieutenant William M. Schrier,* JAGC, USNR (argued).

*See 41 MJ 213, 229 n. * (1994).

For Appellee: *Lieutenant D.K. Herlihy,* JAGC, USN (argued); *Commander S.A. Stallings,* JAGC, USN (on brief); *Colonel J. Composto,* USMC.

*Opinion of the Court*

COX, Judge:

1. The accused stands charged with destroying, removing, or disposing of property to prevent seizure; impersonating a commissioned officer; obtaining services under false pretenses (3 specifications); and wrongfully and unlawfully obtaining telephone services (2 specifications), in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The military judge granted the accused's *in limine* motion to dismiss the Charge and all specifications based on lack of personal jurisdiction.

2. The Government appealed the military judge's ruling. Art. 62, UCMJ, 10 USC § 862 (1983). The Court of Military Review* granted the Government's appeal; held that the court-martial retained personal jurisdiction over the accused; and ordered the record returned to the military judge. 40 MJ 655 (1994).

3. The accused petitioned this Court for review of that decision. Art. 67(a)(3), UCMJ, 10 USC § 867(a)(3) (1989). We granted review of the following issue:

WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW ERRED IN GRANTING THE GOVERNMENT'S APPEAL BECAUSE IT HELD THAT DELIVERY OF THE DISCHARGE CERTIFICATE DID NOT EFFECT DISCHARGE.

4. We hold that the Court of Military Review did not err, so the record must be returned to the military judge.

5. The essential facts are not in dispute. The accused was originally scheduled to be released from active duty on December 13, 1993. For a variety of administrative rea-

sons, the release date was pushed forward to December 15, 1993. *See* Art. 2(a)(1), UCMJ, 10 USC § 802(a)(1) ["Members of a regular component of the armed forces, *including those awaiting discharge after expiration of their terms of enlistment,*" are subject to the UCMJ. (Emphasis added.) ]; *United States v. Poole,* 30 MJ 149 (CMA 1990) ("military jurisdiction continues until a servicemember's military status is terminated by discharge from his enlistment"); *cf. In re Grimley,* 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890). The accused's orders reflect that his separation was to be effective "at 2400" (midnight) on December 15.

6. The personnel clerk who was processing the accused for separation testified that it was "standard procedure ... to leave the 214 [DD Form 214, "CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY"] and the separation documents at the quarterdeck for pick-up at 0001 the next day," in this case December 16. But this clerk did not "follow that procedure." On his own, the clerk decided to "just give people their package when they leave the PSD [Personnel Support Detachment] because they're done." Pursuant to his own "procedure," the clerk handed the accused his DD Form 214 sometime before 2:00 p.m. on December 15.

7. Several hours later, while the accused was still on the installation packing his personal belongings for departure, he was apprehended for the charged offenses and placed in custody, and his separation was formally voided.

8. At the conclusion of the hearing on the motion, the military judge entered the following findings of fact:

First, my finding is:

> That the accused's EAOS [end of active obligated service] was 13 December 1993;
>
> That he was on active duty up until that point;
>
> That his discharge date was changed to 15 December 1993;
>
> That by 15 December, 1400, the accused had completed the checkout process from his command and from PSD;

> That at or about 1400 he was issued a DD–214 and orders, the orders effecting his discharge at 2400 on 15 December 1993;
>
> That although other documents had to be prepared and computer entries made there had been a final accounting; and my reason for that fact is that the accused had indicated and the clerk had approved the fact that a final paycheck would be mailed to the accused at his home address;
>
> That the accused was apprehended at approximately 1630 on 15 December while he was still on a military reservation, and he was on that military reservation pursuant to his original duties, while the accused was still receiving pay, and prior to the 2400 effectiveness date of his order;
>
> That the accused's commanding officer had not made an informed decision to allow the appellant [sic] to be discharged at an earlier date than that authorized by his orders;
>
> That Petty Officer Aquila [the clerk], and I must apologize to an appellate court that reviews this because I don't have a lot of evidence on this, but from the evidence I received I believe I can make the following finding of fact, that Petty Officer Aquila did not follow the approved procedure of delivering DD–214's and orders to the OOD [officer of the day], and have them picked up at 0001 on the 16th of December; that he basically made up his own procedure of delivering the DD–214 early on the day that the accused—prior to him being discharged and allowing the accused and other persons being discharged to basically walk around with their own DD–214 and orders.

9. Notwithstanding the military judge's observation that the orders the accused had been handed stated an effective time of midnight and notwithstanding the judge's finding that no one in a position of authority had authorized an earlier release time, the military judge concluded that our opinion in *United States v. Howard,* 20 MJ 353 (CMA 1985), bound him to conclude that the accused's discharge was effective and complete

*the moment* the clerk handed him his orders and certificate. We disagree.

10. Howard was separated "for unsuitability," under the provisions of Chapter 13, Army Regulation (AR) 635–200, "PERSONNEL SEPARATIONS: ENLISTED PERSONNEL." Unlike the instant case, Howard's orders did not establish an effective time of midnight. The Army Regulation, however, "authorized the commander to retain appellant within his command until midnight on the date of discharge." 20 MJ at 354 ¶ 8.

11. In *Howard,* however, "the [appropriate] commander made an informed decision to allow appellant to be discharged at an earlier time when he authorized him to pick up his discharge certificate, as well as his DD Form 214 and travel pay, and allowed him to be released from the boundaries of the military reservation before any action was taken with a view to trial by court-martial." 20 MJ at 354–55 ¶ 8; *see* para. 1–21, AR 635–200. Indeed, Howard, with command permission, "signed out of the command and was on his way home" by 9:45 a.m. on the day of his discharge. 20 MJ at 353 ¶ 2.

12. Late that evening, however, unbeknownst to Howard, the responsible commander sought to revoke Howard's discharge based on newly received information of Howard's alleged misconduct. It was not until some 9 days into Howard's supposed civilian status that the military authorities finally caught up with him and notified him of the purported earlier revocation and the charges.

13. In *Howard,* we noted, "The narrow question we are called upon to decide is to identify the *moment* of discharge." 20 MJ at 354 ¶ 5. We referred to the "long line of historical service precedents which construed the provisions of the existing congressional statutes as separating a member of the armed services upon delivery to him of the discharge certificate or other valid notice of the termination of his status," 20 MJ at 354 ¶ 6, and cited 10 USC § 1168(a), which provided:

(a) A member of an armed force may not be discharged or released from active duty until his discharge certificate or certificate of release from active duty, respectively, and his final pay or a substantial part of that pay, are ready for delivery to him or his next of kin or legal representative.

14. The Court of Military Review, however, setting aside the decision of the military judge in the instant case, correctly noted the distinction between *Howard* and this case—that there was not here

"an informed [command] decision to allow appellee [Batchelder] to be discharged at an earlier time ..." because (1) the separations clerk was *not* following the instructed procedures, and, more importantly, (2) the discharge package contained a clear statement to the appellee advising him that his status as an active duty servicemember would not terminate until 2400 on 15 December 1993.

40 MJ at 658 ¶ 13, *quoting United States v. Howard,* 20 MJ at 354–55.

15. We agree fully with the reasoning and conclusions of the Court of Military Review. There is no suggestion here that the separations clerk had any authority to establish a different time of discharge from that specified in the accused's orders. In addition, since the orders themselves plainly indicated a command intent to discharge the accused at midnight, it is clear that the clerk did not even have apparent authority to accelerate the discharge event. Indeed there is absolutely nothing in this case to suggest that the accused's orders were effective a single instant prior to the time specified. Until midnight, the accused was merely a person in possession of orders not yet operative. *Cf. United States v. Cole,* 24 MJ 18 (CMA 1987); *Wickham v. Hall,* 12 MJ 145 (CMA 1981) (discharge documents procured by fraud invalid).

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges CRAWFORD, GIERKE, and WISS concur.