*99 Judge CRAWFORD
delivered the opinion of the Court.
Pursuant to his pleas, Appellant was convicted of attempted kidnapping, attempted robbery, and two specifications of conspiracy in violation of Articles 80 and 81, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 881 (2000), respectively. Pursuant to a pretrial agreement, the convening authority approved the sentence of a dishonorable discharge, ten years of confinement, and forfeiture of all pay and allowances, but suspended confinement in excess of seven years. The Court of Criminal Appeals affirmed the findings and sentence. United States v. Harmon, 60 M.J. 776 (N.M.Ct.Crim.App.2004).
ISSUE
WHETHER THE LOWER COURT ERRED BY HOLDING THAT FOR THE PURPOSES OF R.C.M. 202(c), COURT-MARTIAL JURISDICTION ATTACHES AT THE MOMENT A CRIMINAL INVESTIGATION DIVISION AGENT RECEIVES AN ALLEGATION OF A CRIME AND AN ALLEGATION OF A PERPETRATOR OF SAID CRIME.
We uphold the finding of the military judge “that the accused’s status as an active duty service member would not terminate until 2359 on 17 May 2001.”
FACTS
Appellant was a twenty-year-old private in the Marine Corps with about two years of service at the time of these offenses. In the spring of 2001, Appellant’s battalion commander recommended Appellant for an administrative separation for drug abuse. The Commanding General, 2d Force Service Support Group, directed that Appellant be separated from the military no later than May 17, 2001. Appellant acknowledged his rights and waived his right to a hearing before a board of officers. Between May 9, 2001, and May 16, 2001, Appellant went through the steps to out-process from the military. By the morning of May 17, 2001, Appellant had completed all the steps to out-process except picking up his “Certificate of Release or Discharge from Active Duty” (DD Form 214) from the Group Consolidated Administrative Center (GCAC).
As part of Appellant’s out-processing, a “Separation/Travel Pay Certificate” (NAVMC 11060 Form) was prepared on May 9, 2001. This document serves as the “orders” for Marines separated without orders. A servicemember can use this document to obtain advance travel and final pay, to have his or her household goods shipped, or to obtain government-procured transportation for air or bus travel. Appellant would have received a copy of this document as part of his out-processing.
On Appellant’s NAVMC 11060 Form, under the “Pay Information” section, there is a notation of “2359/2001 05 17” typed after the unchecked block that reads “LEAVE AWAITING SEPARATION FROM (TIME AND DATE)_TO (TIME AND DATE) 2359/2001 05 17.” The block “OTHER” is checked and the following information is typed in on the form after “OTHER”: “SNM Request final payment be made by EFT.” Based on the information on this form, Appellant elected to receive his final pay by electronic funds transfer and the disbursing office was to pay Appellant until 2359 hours on May 17, 2001.
Prior to May 17, 2001, Appellant and another Marine from his unit, Private (PVT) John L. Piazza, conspired to rob a third member of their command, Hospitalman (HN) Eric L. Madden. Although Appellant and PVT Piazza took steps to carry out their plan, their attempts failed and they called off the robbery on the evening of May 16, 2001.
On the morning of May 17, 2001, Appellant convinced PVT Piazza to assist him and they devised another plan to carry out their robbery scheme. At approximately 5:00 a.m. on May 17, 2001, they attempted to carry out the plan in the parking lot of the barracks. They concealed themselves in some bushes near the barracks parking lot. Appellant wore a ski mask to conceal his identity. At about 5:20 a.m., HN Madden was crossing the parking lot. Appellant ambushed HN Madden and placed a BB pistol against HN Madden’s back. He demanded the keys to *100 HN Madden’s truck. HN Madden reached into his pocket for his keys and produced a knife. In the ensuing struggle, HN Madden cut Appellant on the hand. PVT Piazza joined the affray and succeeded in separating Appellant from HN Madden. Appellant and PVT Piazza ran off.
At approximately 5:45 a.m., HN Madden reported the attempted robbery and kidnapping to the military police. He also gave a description of Appellant. Shortly after 8:00 a.m., an investigator with the Criminal Investigation Division (CID) interviewed HN Madden who identified Appellant and indicated that Appellant lived in either room 126 or 127 of barracks FC-571. The investigator went to the crime scene to evaluate the situation and seize any evidence.
In the meantime, at approximately 7:30 a.m., Appellant reported to the Separations Office of the GCAC to obtain his discharge paperwork. He was informed he had to return there at about 9:00 a.m., which he did. At that time, the separations clerk gave Appellant the original (Copy 1) and Copy 4 of his DD Form 214. On the DD Form 214, the date of separation was annotated in Block 12b, Separation Date This Period, as “2001 05 17.” Appellant’s terminal date for his reserve obligation was annotated in Block 6, Reserve Obligation Termination Date, as “20010517.” At that time, there were no further administrative or other clearing processes Appellant needed to perform to accomplish discharge.
During the motion session, Chief Warrant Officer-2 (CW02) Rochelle Bilski, Officer in Charge of the Separation Section of the GCAC, testified that based on the information on the NAVMC 11060 Form, Appellant was on active duty until 2359 hours on May 17, 2001. CW02 Bilski stated that as a matter of policy and administrative convenience, the discharge paperwork is not held until 2359 to give to the separated Marine. She stated that there would be no Marines from the GCAC available to give the departing Marines their discharge papers at midnight. She claimed, however, it is normal practice for the clerks in the GCAC office to remind departing Marines that they are on active duty and subject to the UCMJ until 2359 of the day they are discharged so they will not do anything “stupid.”
After receiving his DD Form 214, Appellant left the base and purchased a bus ticket. He returned to the installation briefly. After he left the installation, he went to the home of a friend in the civilian community of Jacksonville, North Carolina.
Based on information that Appellant was a suspect in the robbery, the command notified the GCAC to place a legal hold on Appellant and not to deliver his DD Form 214. However, Appellant had already received his DD Form 214. At 3:00 p.m., Appellant’s commander issued a “Deserter/Absentee Wanted by the Armed Forces” (DD Form 553) for his apprehension. On that same day, the Commanding General, 2d Force Service Support Group, revoked Appellant’s administrative discharge and directed that Appellant’s separation be held in abeyance pending the investigation and disposition of the attempted robbery allegations.
About 5:00 p.m. that day, Appellant was taken into custody in the civilian community. He was placed in pretrial confinement where he remained until trial.
At trial, Appellant moved to dismiss the charges and specifications, arguing that he had been discharged and was no longer subject to in personam court-martial jurisdiction. The military judge denied the motion to dismiss the charges for lack of personal jurisdiction. He found that the discharge documents indicated the discharge authority intended for Appellant’s discharge to become effective at 2359 on May 17, 2001, thus, Appellant’s status as a military member continued until that time. Because the command acted to revoke the discharge prior to that time, Appellant’s military status was not terminated on May 17, 2001, and the court-martial had personal jurisdiction over Appellant.
Appellant renewed his argument at the Court of Criminal Appeals. The Court of Criminal Appeals held “an investigatory action constitutes sufficient official action to preserve military jurisdiction” and that “because the investigation of serious violations *101 of the UCMJ was initiated and focused on Appellant before delivery of his discharge, we find that jurisdiction of Appellant attached prior to 0900 hours on 17 May 2001.” Harmon, 60 M.J. at 779. That court did not review the military judge’s determination that the effective time of separation was 2359 because it concluded that jurisdiction attached prior to the 9:00 a.m. delivery of the DD Form 214. Id. at 780.
DISCUSSION
Jurisdiction is the power of a court to try and determine a ease and to render a valid judgment. Jurisdiction “is a legal question which we review de novo.” See, e.g., United States v. Henderson, 59 M.J. 350, 352 (C.A.A.F.2004). Generally, there are three prerequisites that must be met for courts-martial jurisdiction to vest: (1) jurisdiction over the offense, (2) personal jurisdiction over the accused, and (3) a properly convened and composed court-martial. See Rule for Courts-Martial (R.C.M.) 201(b). The focus in this case is whether the court-martial had personal or in personam jurisdiction over Appellant at the time of trial.
“Members of a regular component of the armed forces, including those awaiting discharge after expiration of their terms of enlistment” are subject to the UCMJ. Article 2(a)(1), UCMJ, 10 U.S.C. § 802(a)(1) (2000). Generally, “a person becomes subject to court-martial jurisdiction upon enlistment in or induction into the armed forces.... Court-martial jurisdiction over active duty personnel ordinarily ends on delivery of a discharge certificate or its equivalent to the person concerned issued pursuant to competent orders.” R.C.M. 202(a) Discussion (2). Thus, military jurisdiction over the person continues as long as military status exists. Solorio v. United States, 483 U.S. 435, 439, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987) (jurisdiction of a court-martial depends solely on the accused’s status as a member of the armed forces).
“A member of an armed force may not be discharged or released from active duty until his discharge certificate ... and his final pay or a substantial part of that pay, are ready for delivery to him----” 10 U.S.C. § 1168(a) (2000). To effectuate an early discharge, there must be: (1) a delivery of a valid discharge certificate; (2) a final accounting of pay; and (3) the undergoing of a “clearing” process as required under appropriate service regulations to separate the member from military service. United States v. King, 27 M.J. 327, 329 (C.M.A.1989) (discharge certificate delivered to sailor for the purposes of executing a reenlistment does not deprive military authorities of court-martial jurisdiction).
If an individual commits an offense before his official discharge, and the military initiates action with a view to trial, the individual may be retained in the service for trial. R.C.M. 202(c)(1). “If jurisdiction has attached [by the commencement of action] before the effective terminal date of self-executing orders,[1] the person may be held for trial by court-martial beyond the effective terminal date.” R.C.M. 202(c)(1) Discussion. “Actions by which court-martial jurisdiction attaches include: apprehension; imposition of restraint, such as restriction, arrest, or confinement; and preferral of charges.” R.C.M. 202(c)(2).
Delivery of a valid discharge can operate as a termination of court-martial in personam jurisdiction. See Smith v. Vanderbush, 47 M.J. 56, 58 (C.A.A.F.1997) (in personam jurisdiction was lost when accused was discharged after arraignment but before lawful authority resolved the charges and the Court found no evidence that the discharge authority intended to discharge the accused on his expiration term of service (ETS)). However, the discharge authority must have intended the discharge to take effect. See United States v. Batchelder, 41 M.J. 337, 339 (C.A.A.F.1994) (it was clear from face of certificate the commander did not intend the discharge to take effect until later).
*102 Military services are required to ensure that “every member ... being separated from the Military Services is given a completed DD Form 214 describing relevant data regarding the member’s service, and the circumstances of termination____ DD Forms 2H are not intended to have any legal effect on termination of the member’s service.” Dep’t of Defense, Instr. 1336.1, Certifícate of Release or Discharge from Active Duty (DD Form 214/5 Series) para. 3.2 (Jan. 6, 1989, incorporating through Change 3, Feb. 28, 2003) (emphasis added).
At the time of the incident in this case, the Marine Corps Separation and Retirement Manual (MARCORSEPMAN), Marine Corps Order (MCO) P1900.16E ch. 1, para. 1007(1), at 1-22 (Aug. 18, 1995),[2] provided that “[a] discharge or separation takes effect upon delivery of a valid discharge or separation document.” However, paragraph 3 1007(3) recognized that “[f]or the purpose of entitlement benefits administered by the Department of Veterans Affairs (DVA), 38 U.S.C. 106(c) provides that a Marine discharged or released from a period of active duty shall be deemed to have continued on active duty ... until midnight of the date of such discharge or release.” Id. at 1-23.
Although physical delivery of a discharge certificate is generally considered the event that terminates a servicemember’s active duty status, it is crucial to consider the intent of the command to determine the actual effective time and date of discharge. See United States v. Melanson, 53 M.J. 1, 4 (C.A.A.F.2000) (jurisdiction existed because pursuant to Dep’t of the Army, Reg. 635-200, a discharge takes effect at 2400 hours on the date of notice of discharge to the soldier); Batchelder, 41 M.J. at 339 (delivery of a discharge certificate for administrative convenience does not terminate jurisdiction when a certificate is clear on its face that the commander did not intend that the discharge take effect until a later time). See also Hamon v. United States, 10 Cl.Ct. 681, 683 (1986) (legislative history indicates that 10 U.S.C. § 1168(a) is not concerned with the actual receipt of the discharge documents, but rather with facilitating the veteran’s return to civilian life and that all that is required is that the discharge document be ready for delivery on the separation date).
In this case, Appellant was being administratively separated from the military for misconduct prior to his scheduled end of active service (EAS) date. His scheduled discharge date, based on the administrative discharge and order of the commander, was established as May 17, 2001. On May 17, 2001, at 9:00 a.m., Appellant received a copy of his DD Form 214. The date of his discharge was noted on the DD Form 214, Block 12b, as May 17, 2001. There was no effective “time” for discharge indicated on the DD Form 214.[3] At some point during out-processing, Appellant received a copy of the NAVMC 11060. The NAVMC 11060 Form, however, indicated “2359/2001 05 17” as the end date and “time” of Appellant’s active duty service.
The DD Form 214 in conjunction with the NAVMC 11060 Form, clearly indicated the command’s intent to discharge Appellant at 2359 hours on May 17, 2001. It was not the command’s intent that Appellant’s discharge would be effective at some arbitrary point in time when a personnel clerk decided to deliver the copies of the DD Form 214 to Appellant. Until 2359 hours on May 17, 2001, Appellant “was merely a person in possession of [an order] not yet operative.” Batchelder, 41 M.J. at 339. See also United States v. Guest, 46 M.J. 778, 780 (A.Ct.Crim.App.1997) (the intent of parties was germane to wheth *103 er the courtesy copy of DD Form 214 operated as the official discharge certificate); In re Shattuck, 63 Comp. Gen. 251, 252 (1984) (the effective date of the discharge is not dependent on the delivery of the certificate but on the intent of the command and servicemem-ber that discharge is effective on a given date).
Prior to 2359 hours on May 17, 2001, the command placed a legal hold on Appellant. As a result, in personam jurisdiction over Appellant was never lost. See United States v. Williams, 53 M.J. 316, 317 (C.A.A.F.2000) (jurisdiction over the accused did not terminate because a valid legal hold was placed on the accused on the same day the discharge certificate was mailed to him).
In light of our holding, it is not necessary for us to determine whether the court below was correct in concluding that jurisdiction over Appellant attached when Appellant became the focus of a criminal investigation. We hold that the military judge’s findings were correct. The discharge was not effective until 2359 hours on May 17, 2001. A valid legal hold was placed on Appellant and his discharge was revoked before the time and date his discharge was supposed to take effect. Thus, we find the military had in personam jurisdiction over Appellant at the time of his trial.
DECISION
Accordingly, the findings and the sentence as approved on review below, are affirmed.

. Self-executing orders are those that "by their own terms automatically become effective on the specified effective date without any further action being required." United States v. Smith, 4 M.J. 265, 266 n. 3 (C.M.A.1978).

. Although MCO P1900.16F replaced MCO P1900.16E on May 30, 2001, the relevant language in paragraph 1007 remained the same. MARCORSEPMAN, MCO P1900.16F, ch. 1, para. 1007(1), at 1-20 (May 30, 2001). On July 18, 2003, paragraph 1007 of MCO P1900.16F was modified to specify the effective "time” of the discharge as 2359 on the date of the discharge or separation. MARCORSEPMAN, MCO P1900.16F, ch. 1, para. 1007(1), at 1-20 (July 18, 2003).

. The Department of Defense instructions and the service instructions or regulations do not require that the effective end of service "time” be included in Blocks 12b or 6 of the DD Form 214. The instructions only require that the EAS date be noted.