# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39039**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Todd J. FERRANDO**
Master Sergeant (E-7), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 16 October 2017

————————————

*Military Judge:* Joseph S. Imburgia.

*Approved sentence:* Dishonorable discharge, confinement for 90 days, and reduction to E-1. Sentence adjudged 13 January 2016 by GCM convened at Hill Air Force Base, Utah.

*For Appellant:* Major Allen S. Abrams, USAF.

*For Appellee:* Major Mary Ellen Payne, USAF; Major Meredith L. Steer, USAF; Gerald R. Bruce, Esquire.

Before HARDING, SPERANZA, and HUYGEN, *Appellate Military Judges*.

Judge SPERANZA delivered the opinion of the court, in which Senior Judge HARDING and Judge HUYGEN joined.

————————————

**PUBLISHED OPINION OF THE COURT**

————————————

SPERANZA, Judge:

A military judge sitting as a general court-martial found Appellant guilty, consistent with his pleas pursuant to a pretrial agreement, of possessing child pornography in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. The military judge sentenced Appellant to a

dishonorable discharge, confinement for 13 months, and reduction to E-1. Consistent with the terms of the pretrial agreement, the convening authority approved only 90 days of confinement but approved the remainder of the adjudged sentence.

On appeal, Appellant raises the following errors: (1) his court-martial lacked personal jurisdiction; (2) the military judge determined his sentence based on the incorrect maximum punishment; (3) he was denied effective assistance of counsel by one of his detailed military defense counsel; (4) his protection against double jeopardy was violated; (5) pre-preferral delay denied him a speedy trial and due process; and (6) the conditions of his post-trial confinement warrant sentence relief.[1] We disagree with Appellant's assertions, find no prejudicial error, and affirm. We address Appellant's claims related to jurisdiction, the maximum authorized punishment, the effectiveness of his senior defense counsel, and his post-trial confinement conditions. We have considered and reject Appellant's remaining claims, which neither require additional analysis nor warrant relief. *See United States v. Matias*, 25 M.J. 356, 363 (C.M.A. 1987).

## I. BACKGROUND

Appellant, a reservist, downloaded and viewed child pornography from 2006 until his proclivity for child pornography was discovered by law enforcement in November 2011. Appellant subsequently admitted to possessing digital images and videos of child pornography and estimated the youngest child depicted in his files to be approximately 5 years old.

In July 2013, Appellant was charged in Utah state court with 20 counts of sexual exploitation for child pornography files he possessed between May 2011 and January 2012. In May 2014, Appellant pleaded guilty to four of these charges[2] and was sentenced to a suspended prison sentence, a fine, three years' probation, 250 days in jail (77 days of time served), therapy, and sex offender registration.

The charge and specification in this case alleged Appellant possessed eight specific digital depictions of child pornography while on active duty in July 2010. The charge and its specification were preferred and received by

---

[1] Issues (3)–(6) were raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[2] The remaining charges were dismissed.

the summary court-martial convening authority in July 2015, just short of five years after the charged misconduct.

## II. DISCUSSION

### A. Personal Jurisdiction

Appellant is a member of the Air Force Reserve. In 2012, Appellant extended his enlistment in the reserves for an additional four years. Appellant was on active duty when he committed the charged offense and stipulated to this fact.

On 23 April 2015, the general court-martial convening authority (GCM-CA) requested the Secretary of the Air Force (SECAF) approve, pursuant to Article 2(d)(5), UCMJ, 10 U.S.C. § 802(d)(5) (2012), Appellant's recall to active duty, as needed.

In a 28 June 2015 memorandum to Appellant's squadron commander with the subject "Recall of [Appellant] for Trial by Court-Martial," the GCMCA issued the following order: "Pursuant to [Air Force Instruction (AFI)] 51-201, paragraph 2.9,[3] I direct that [Appellant] be involuntarily ordered on to active duty for preferral of charges, a pre-trial hearing, and trial by court-martial."

Accordingly, Appellant received one-day active duty orders for preferral of charges on 11 July 2015. The orders' remarks section cited 10 U.S.C. § 12301(d)[4] as the orders' authority and stated, inter alia, "Member is involuntarily ordered to active duty for referral of charges, pre-trail [sic] hearing and trial by court-martial pursuant to AFI 51-201 para 2.9 in liew [sic] of scheduled [inactive duty training]." As ordered, Appellant appeared before his commander, who properly preferred the charge and specification in this case. However, Appellant refused to sign his orders. At the time of trial, Appellant had not yet been paid for performing active duty on these orders.

---

[3] The Secretary concerned shall prescribe regulations setting forth rules and procedures for the exercise of court-martial jurisdiction over reserve component personnel under Article 2(d), subject to the limitations of the *Manual for Courts-Martial* and the UCMJ. Rule for Courts-Martial (R.C.M.) 204(a). AFI 51-201, *Administration of Military Justice*, sets forth such rules and procedures for the exercise of court-martial jurisdiction over Air Force Reserve members.

[4] 10 U.S.C. § 12301(d) provides that "[a]t any time, an authority designated by the Secretary concerned may order a member of a reserve component under his jurisdiction to active duty, or retain him on active duty, with the consent of that member."

On 14 July 2015, three days after preferral, the SECAF approved the GCMCA's request to recall Appellant. The SECAF's response stated,

On April 23, 2015, you requested my approval, pursuant to Article 2(d)(5), Uniform Code of Military Justice [UCMJ], to recall [Appellant] to active duty, as needed. You made this request so that, if convicted, a court-martial may adjudge, and [Appellant] may be required to serve, a sentence to confinement or restriction on liberty. I hereby approve any recall to active duty of [Appellant] which you have ordered, or may hereafter order.

Appellant was placed on one-day active duty orders for his pretrial hearing on 27 August 2015. The remarks section of the orders again cited 10 U.S.C. § 12301(d) as the orders' authority and included the statement, "Member is recalled for a court-martial proceeding." Appellant attended his pretrial hearing and was paid for performing his duties.

Appellant's three-day active duty orders for his court-martial also cited 10 U.S.C. § 12301(d) as the orders' authority. The remarks section was silent with respect to any disciplinary purpose and, instead, referenced "Home Station Training."

At trial, Appellant moved to dismiss the charge and its specification, arguing that the errors in his orders divested the court-martial of personal jurisdiction. The military judge rejected this claim and found that Appellant's orders and Article 2(c), 10 U.S.C. § 802(c),[5] "gave the Air Force jurisdiction over [Appellant] on the date of preferral and the date of the Article 32 hearing as well." The military judge also sought Appellant's position regarding his orders for trial. Appellant's trial defense counsel affirmed "for today's orders

---

[5] 10 U.S.C. § 802(c) provides:

Notwithstanding any other provision of law, a person serving with an armed force who—

 (1) submitted voluntarily to military authority;

 (2) met the mental competence and minimum age qualifications of sections 504 and 505 of this title at the time of voluntary submission to military authority;

 (3) received military pay or allowances; and

 (4) performed military duties;

is subject to this chapter until such person's active service has been terminated in accordance with law or regulations promulgated by the Secretary concerned.

we believe it's best just to proceed without a delay, so we would consent to continuing only with regard to today's orders." Appellant agreed with his counsel, stating, "I do consent to continue on with the orders that are present today." The military judge, in turn, concluded,

> And so with your consent, we will proceed. I will say that I think the same analysis would apply even without your consent, but pursuant to Article 2(c), we're still all here and you're -- you are objecting to the fact now you could potentially make an argument going forward, but as of -- everything that's occurred up to this point in time, I believe 2(c) covers that and therefore provides jurisdiction to this court.

Appellant now raises similar jurisdictional arguments on appeal. Appellant claims that "the error in [his] orders go to the heart of whether there was jurisdiction altogether." Specifically, Appellant maintains that the "error in [his] orders here is critical because 10 U.S.C. 12301(d) is not a proper basis to recall a member to active duty for disciplinary proceedings and because the Air Force's error in relying on that authority was not an administrative error." In Appellant's estimation, this "critical error" demands we "set aside the findings and sentence." We disagree. Appellant committed his offense while on active duty. Importantly, Appellant retained his military status as a reservist, thus remaining subject to court-martial jurisdiction.

"Jurisdiction is a legal question which we review de novo." *United States v. Harmon*, 63 M.J. 98, 101 (C.A.A.F. 2006) (internal quotations omitted). There are three general prerequisites "that must be met for courts-martial jurisdiction to vest: (1) jurisdiction over the offense, (2) personal jurisdiction over the accused, and (3) a properly convened and composed court-martial." *Id.*; *see* Rule for Courts-Martial (R.C.M.) 201(b). Here, we are focused only on whether the court-martial had personal jurisdiction over Appellant.

"[B]oth the Supreme Court of the United States and [the Court of Appeals for the Armed Forces (CAAF)] have insisted that courts-martial not exercise jurisdiction beyond that granted by the applicable statutes." *Willenbring v. Neurauter*, 48 M.J. 152, 157 (C.A.A.F. 1998).

Article 2, UCMJ, 10 U.S.C. § 802, establishes the classes of persons subject to the code. *See* R.C.M. 202(a), Discussion. Generally, a court-martial "may try any person when authorized to do so under the [UCMJ]." R.C.M. 202(a). Accordingly, active duty personnel, to include "persons lawfully called or ordered into, or to duty in or for training in, the armed forces, from the dates when they are required by the terms of the call or order," are subject to the code. *See* Article 2(a)(1), UCMJ, 10 U.S.C. § 802(a)(1); *see also* R.C.M. 202(a), Discussion (5) *Members of a Reserve Component* ("Members of a re-

serve component in federal service on active duty, as well as those in federal service on inactive-duty training, are subject to the code. Moreover, members of a reserve component are amenable to the jurisdiction of courts-martial notwithstanding the termination of a period of such duty.").

In pertinent part, Article 3, UCMJ, 10 U.S.C. § 803, provides,

> A member of a reserve component who is subject to this chapter is *not*, by virtue of the termination of a period of active duty or inactive-duty training, relieved from amenability to the jurisdiction of this chapter for an offense against this chapter committed during such period of active duty or inactive-duty training.

10 U.S.C. § 803(d) (emphasis added).

In other words,

> [a] member of a reserve component at the time disciplinary action is initiated, who is alleged to have committed an offense while on active duty or inactive-duty training, is subject to court-martial jurisdiction without regard to any change between active and reserve service or within different categories of reserve service subsequent to commission of the offense.

R.C.M. 204(d); *see also Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), App. 21, at A21–13 ("Use of the term 'member of a reserve component' in Article 3(d) means membership in the reserve component at the time disciplinary action is initiated.").

However, a person whose military status was completely terminated after commission of an offense is generally not subject to court-martial jurisdiction. *Id.*; R.C.M. 204(d) Discussion ("A member of a regular or reserve component remains subject to court-martial jurisdiction after leaving active duty for offenses committed prior to such termination of active duty if the member retains military status in a reserve component without having been discharged from all obligations of military service.").

Article 30, UCMJ, 10 U.S.C. § 830, establishes the requirements for preferral of charges and specifications. The statute requires the following:

> (a) Charges and specifications shall be signed by a person subject to this chapter under oath before a commissioned officer of the armed forces authorized to administer oaths and shall state—
>
> (1) that the signer has personal knowledge of, or has investigated, the matters set forth therein; and

6

(2) that they are true in fact to the best of his knowledge and belief.

(b) Upon the preferring of charges, the proper authority shall take immediate steps to determine what disposition should be made thereof in the interest of justice and discipline, and the person accused shall be informed of the charges against him *as soon as practicable.*

Article 30(a)-(b), UCMJ, 10 U.S.C. § 830(a)-(b) (emphasis added).

Pursuant to Article 2(d)(1), UCMJ, 10 U.S.C. § 802(d)(1),

a member of the reserve component who is not on active duty and who is made the subject of proceedings under [Article 30, UCMJ,] with respect to an offense against the [UCMJ] may be ordered to active duty involuntarily for the purpose of —

(A) a preliminary hearing under [Article 32, UCMJ; or]

(B) trial by court-martial[.]

Article 2(d)(1)(A)-(B), UCMJ, 10 U.S.C. § 802(d)(1)(A)-(B) (emphasis added).

"A member of a reserve component must be on active duty prior to arraignment at a general or special court-martial." R.C.M. 204(b).

A member ordered to active duty pursuant to Article 2(d) may be retained on active duty to serve any adjudged confinement or other restriction on liberty if the order to active duty was approved in accordance with Article 2(d)(5), but such member may not be retained on active duty pursuant to Article 2(d) after service of the confinement or other restriction on liberty.

R.C.M. 204(b)(1).

Only a general court-martial convening authority in a regular component of the armed forces may order a member of the reserve component to active duty involuntarily for the purpose of a preliminary hearing and trial by court-martial under Article 2(d). Article 2(d)(4), UCMJ, 10 U.S.C. § 802(d)(4). Moreover, "unless the order to active duty was approved by the Secretary concerned," a member involuntarily ordered to active duty pursuant to Article 2(d) may not be sentenced to confinement or generally "be required to serve a punishment consisting of any restriction on liberty during a period other than a period of inactive-duty training or active duty." Article 2(d)(5), UCMJ, 10 U.S.C. § 802(d)(5).

The applicable statutes subjected Appellant to court-martial jurisdiction for the charged offense. Appellant committed the charged offense while on active duty. Appellant was a member of the Air Force Reserve at the time

disciplinary action in this case was initiated and maintained his military status as a member of the Air Force Reserve. The Air Force had personal jurisdiction over Appellant.[6]

The Air Force chose to exercise jurisdiction. The charge and specification were properly preferred,[7] making Appellant the subject of proceedings under Article 30, UCMJ, with respect to an offense against the code. A GCMCA in the regular component of the Air Force directed—in no uncertain terms—Appellant be involuntarily ordered to active duty for a pretrial hearing and trial by court-martial. The GCMCA's command was administratively executed and Appellant was issued active duty orders for the preliminary hearing and trial. These orders were approved by the SECAF, thus authorizing the court-martial to sentence Appellant to confinement. The statutory requirements necessary to order Appellant onto active duty involuntarily under Article 2 were met; Appellant's consent manifested by his signature was unnecessary despite the administrative errors in Appellant's written orders that cited authority requiring Appellant's consent. *See United States v. O'Connor*, No. ACM 38420, 2015 CCA LEXIS 47, at \*11 (A.F. Ct. Crim. App. 12 Feb. 2015) (unpub. op.) (holding that erroneous citation to 10 U.S.C. § 12301(d) in reservist appellant's orders was an administrative error that did not divest the court-martial of personal jurisdiction when the Air Force clearly intended to recall Appellant to active duty for his court-martial pursuant to the GCMCA's directive and the Secretary's approval). These administrative errors, while careless and avoidable, did not divest the court-martial of personal jurisdiction. Put another way, an administrative or clerical error committed by the Air Force in properly exercising its statutory jurisdiction over a member does not divest the court-martial of its otherwise lawful jurisdiction over that member.

---

[6] Appellant conceded these "Jurisdictional Facts" in a stipulation of fact admitted as a Prosecution Exhibit at trial.

[7] Contrary to Appellant's argument that administrative errors on his one-day active duty orders for preferral somehow divested the court-martial of personal jurisdiction, the law does not require Appellant to be on active duty orders the day charges and specifications are preferred in order for the requirements of Article 30 to be met. *See* Article 30, UCMJ, 10 U.S.C. § 830; *see also* R.C.M. 308 (The "sole remedy" for failing to inform an accused of the preferred charges and the name of the accuser and of any person who ordered the charges to be preferred, if known, is "a continuance or recess of sufficient length to permit the accused to adequately prepare a defense, and no relief shall be granted upon a failure to comply with this rule unless the accused demonstrates that the accused has been hindered in the preparation of a defense.").

Nonetheless, we will test the clerical mistakes in Appellant's orders for prejudice. *See id.* In addressing the prejudice he suffered due to the errors in his orders, Appellant maintains that the "flaws" in his orders "were not merely clerical." Accordingly, Appellant contends that there were no facts "present in this case" to indicate that Appellant consented to jurisdiction; did not object to jurisdiction at the time of preferral, the pretrial hearing, or trial; signed his recall orders; and received pay or would receive pay.

Appellant concludes,

> Here, the error goes directly to [his] recall to active duty at preferral and each of the ensuing proceedings, [he] never took any action that would indicate his consent to jurisdiction—instead challenging it at every opportunity[8]—and the government's actions thrice disregard [this court's decision in *O'Connor* that made] clear Appellant's orders [were] plainly wrong.
>
> Based on these distinctions, the errors in Appellant's recall to active duty were not clerical and, even if they were, Appellant was prejudiced. As such, this Court should determine Appellant never consented to jurisdiction, was never properly ordered to active duty, and his court-martial lacked personal jurisdiction

Appellant's argument hinges on a finding that, in this case, the administrative errors or "flaws" in his orders "were not merely clerical." Indeed, his orders contained errors, but those administrative errors did not cause any discernable prejudice to Appellant, apart from his circular argument that the court-martial therefore lacked personal jurisdiction. Appellant was issued active duty orders and appeared for duty, in uniform, pursuant to those orders, for preferral, his Article 32, UCMJ, hearing, and his general court-martial. There simply was no confusion about his active duty status at the time he committed the charged offense, preferral, the preliminary hearing, and trial. *See United States v. Nettles*, 74 M.J. 289, 291 (C.A.A.F. 2015) ("The overarching interest implicated by the law of personal jurisdiction . . . is the need—of both servicemember and service—to know with certainty and finality what the person's military status is and when that status changes."). Moreover, Appellant was on active duty orders for his general court-martial, prior to arraignment and affirmatively consented to jurisdiction at trial. *See*

---

[8] Appellant's trial defense counsel made a different argument in seeking clemency on behalf of Appellant. She stated "[Appellant] even consented to being court-martialed so [he] could take responsibility for his actions and move forward with his life."

R.C.M. 204(b). Appellant's broad claim of prejudice considering the certainty of his status fails.

**B. Maximum Punishment**

Because the specification in this case alleged Appellant violated Article 134, UCMJ, by knowingly possessing in 2010 one or more depictions of a minor engaging in sexually explicit conduct and, thus, committing conduct of a nature to bring discredit upon the armed forces, the maximum authorized punishment was determined by reference to 18 U.S.C. § 2252A(a)(5) (2006), a "closely related" offense in the United States Code. *See United States v. Finch*, 73 M.J. 144, 147 (C.A.A.F. 2014); R.C.M. 1003(c)(1)(B).

Under the statute, the maximum punishment for knowingly possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5) is ten years' imprisonment. 18 U.S.C. § 2252A(b)(2).

> [B]ut, if any image of child pornography involved in the offense involved a prepubescent minor or a minor who had not attained 12 years of age, such person shall be fined under this title and imprisoned for not more than 20 years, or if such person has a prior conviction under this chapter, chapter 71, chapter 109A, or chapter 117 [18 USCS § 2251 et seq., § 1460 et seq., § 2241 et seq., or § 2421 et seq.], or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person shall be fined under this title and imprisoned for not less than 10 years nor more than 20 years.

*Id.*

At trial prior to arraignment, the parties disagreed about what the maximum punishment authorized was in Appellant's case. The Government argued Appellant could be sentenced to 20 years of confinement due to the age of the minors depicted in the material Appellant possessed and Appellant's prior conviction in Utah. The Defense argued that neither enhancement provision applied. The military judge took a recess in order to review the depictions and consider the matter. During the recess, the convening authority signed the pretrial agreement limiting Appellant's sentence to no more than 90 days of confinement.

Immediately after the recess, the military judge found that both enhancement provisions applied and Appellant faced a maximum of 20 years of confinement. The military judge noted that he was informed of the signed

pretrial agreement during the recess. Appellant was arraigned; litigated and lost his motion to dismiss the charge and specification; and pleaded guilty pursuant to the pretrial agreement. After completing the providence inquiry with Appellant, the military judge advised Appellant that, on the plea of guilty alone, the court-martial could sentence Appellant, *inter alia*, to confinement for 20 years. Appellant did not have any questions regarding the maximum punishment and continued with his guilty plea after being advised that he could withdraw from the pretrial agreement at any time prior to his sentence being announced. The military judge found Appellant guilty consistent with Appellant's pleas and sentenced Appellant.

On appeal, Appellant argues that the military judge erred in determining the maximum punishment included 20 years of confinement, instead of 10 years of confinement. Appellant specifically contends that the statutory provision regarding the age of the minors depicted in the child pornography was not part of the legislation until after the charged misconduct and that Appellant's Utah convictions were not "prior convictions" because those convictions were based on conduct that occurred after the charged misconduct in this case. Accordingly, Appellant asks we set aside his sentence.

"The maximum punishment authorized for an offense is a question of law, which we review de novo." *United States v. Beaty*, 70 M.J. 39, 41 (C.A.A.F. 2011) (citing *United States v. Ronghi*, 60 M.J. 83, 84–85 (C.A.A.F. 2004); *United States v. Ingham*, 42 M.J. 218, 229–30 (C.A.A.F. 1995)).

"A finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." Article 59(a), UCMJ, 10 U.S.C. § 59(a).

Here, we need not decide whether the military judge erred in the determination of the maximum lawful sentence to confinement because we find the disparity did not prejudice Appellant. Appellant makes no argument that the military judge's determination of the maximum confinement rendered his guilty plea improvident in any way. Appellant also makes no argument that any misunderstanding he may have held as to the maximum punishment was a factor, let alone a substantial factor, in his decision to plead guilty. Importantly, Appellant makes no showing that he suffered any prejudice when he signed a pretrial trial agreement limiting his confinement to 90 days, believing the maximum confinement he faced was 10 years of confinement[9] ra-

---

[9] In a pretrial memorandum, Appellant certified that "[b]ased solely on the charges [sic] that were preferred upon [him, he understood] the maximum punishment is 10

*(Footnote continues on next page)*

ther than the 20 years determined by the military judge *afterwards*. The adjudged confinement of 13 months was roughly a tenth of a presumed maximum of 10 years of confinement and Appellant's pretrial agreement limited the confinement that could be approved to only 90 days. If there was an error in the determination of the maximum punishment, we find that it did not materially prejudice the substantial rights of Appellant.

## C. Effectiveness of Counsel

Appellant was represented by a Major (O-4) senior defense counsel and Captain (O-3) area defense counsel. Over the course of their representation, neither one of Appellant's counsel expressed concern regarding Appellant's mental responsibility or capacity to stand trial. Appellant expressed his desire to reach an agreement that would minimize his exposure to confinement. Accordingly, Appellant's counsel negotiated a pretrial agreement that would limit Appellant's confinement to no more than 90 days.

Prior to trial, Appellant's counsel advised him of his rights, including his right to decide how to plead. Appellant decided he wanted to plead guilty to the charge and specification. Appellant's trial defense counsel's advice and Appellant's decision to plead guilty were documented. In a memorandum, Appellant certified the following: both of his detailed counsel explained his rights to him "on multiple occasions during the months leading up to this court-martial;" he was "fully aware of the charges and specifications [sic] against [him;]" he "discussed with [his] attorney the evidence the Government intends to introduce against [him] at trial;" he chose to plead guilty after consulting with his attorneys; he understood that the decision to plead guilty was his and his alone; he was "only pleading guilty because [he was] guilty and believe[d] that doing so [would] be in [his] best interest;" he understood he could change his election to plead guilty with or without good cause; the memorandum was intended to memorialize his decision to plead guilty prior to trial after fully consulting with his attorney; he was "fully counseled by [his senior defense counsel and area defense counsel] and [he] made this decision [to plead guilty] and signed [the memorandum] knowingly, voluntarily and of [his] own free will;" "[a]fter a full and in-depth discussion with [both of his counsel], [he felt] fully informed of [his] rights and the potential consequences of [his] decision;" "[he had] plenty of time to discuss this with [his counsel];" he did "not feel the need for additional time to discuss [his guilty plea] with [both of his counsel] or review evidence;" he "fully believe[d]

---

years confinement, forfeiture of all pay and allowances, reduction to the rank of E-1, and a dishonorable discharge."

[both of his counsel] have provided [him] with all of the necessary information to enable [him] to make a fully informed decision and that his [counsel's] representation has been to the benefit of [Appellant] and [his] case;" and he has "not been threatened or coerced and [made] these decisions of [his] own free will."

Appellant signed a pretrial offer to plead guilty in exchange for a 90-day limitation on any adjudged confinement. In his offer, Appellant agreed, *inter alia*, to enter into a reasonable stipulation of fact and waive all waivable motions. Appellant also asserted that he was, in fact, guilty; he understood the agreement "permits the [G]overnment to avoid presentation in court of sufficient evident to prove [his] guilt;" he offered to plead guilty because the sentencing relief was in his best interest; he was satisfied with his defense counsel and considered them competent to represent him at the court-martial; and "[n]o person or persons made any attempt to force or coerce [him] into making this offer to plead guilty." Appellant further maintained the following:

> My defense counsel fully advised me of the nature of the charge against me, the possibility of my defending against it, any defense which might apply, and the effect of the guilty plea which I am offering to make, and I fully understand their advice and the meaning, effect, and consequences of this plea.

The convening authority accepted Appellant's offer prior to arraignment. After litigating his motion to dismiss the charge, Appellant pleaded guilty pursuant to the pretrial agreement. The military judge admitted a stipulation of fact establishing the jurisdictional and factual basis for Appellant's guilty plea. Appellant signed the stipulation; agreed, under oath, to its contents; and agreed, under oath, that he entered into the stipulation voluntarily.

The military judge conducted a providence inquiry of Appellant, explaining the elements of the offense and eliciting from Appellant the factual basis for his guilty plea. Next, the military judge discussed Appellant's pretrial agreement. Appellant confirmed that he understood the terms of the agreement and affirmed that he was not forced in any way to enter into the agreement. Appellant then confirmed, once again, that he fully consulted with his defense counsel and was satisfied with their representation and their advice. He also confirmed, once again, that he was pleading guilty voluntarily and of his own free will and affirmatively denied that anyone made any threat or tried in any way to force him to plead guilty. Appellant acknowledged that he understood he had a moral and legal right to plead not guilty and place the burden on the Government to prove his guilt beyond a reasonable doubt. Appellant consulted with his counsel before being found guilty consistent with his plea.

Now on appeal, Appellant claims that his senior defense counsel "was deficient in his performance." In general, Appellant alleges that the senior defense counsel "failed to seek the suppression of the evidence that would support the prosecution's case had Appellant entered a plea of not guilty, and coerced Appellant to plead guilty and waive motions despite the evidentiary weaknesses in the case and Appellant's mental stress."

In response to Appellant's claims, we ordered and received a declaration from Appellant's senior defense counsel. The senior defense counsel's declaration addressed the specific allegations raised by Appellant and included memoranda initialed and signed by Appellant.

The Sixth Amendment guarantees Appellant the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Accordingly, "an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687). "The *Strickland* test applies in the context of guilty pleas where an appellant challenges the plea based on ineffective assistance of counsel." *United States v. Rose*, 71 M.J. 138, 143 (C.A.A.F. 2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).

In determining whether counsel's performance was deficient, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Appellant must therefore establish that counsel's "representation amounted to incompetence under 'prevailing professional norms.'" *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).

To prevail on his ineffective assistance of counsel claim, Appellant must also establish that he was prejudiced. *Rose*, 71 M.J. at 144. In the context of a guilty plea, the prejudice question is whether "there is a reasonable probability, but for counsel's errors, [Appellant] would not have pleaded guilty and would have insisted on going to trial." *Id.* (quoting *Hill*, 474 U.S. at 59).

We review allegations of ineffective assistance of counsel de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009)).

The record in Appellant's case, to include the declaration of the senior defense counsel and memoranda signed by Appellant, refutes Appellant's inef-

fective assistance of counsel allegations.[10] Trial defense counsel's explanations and actions in this case were reasonable, and his level of advocacy was at or above the performance ordinarily expected of fallible lawyers. *See Gooch*, 69 M.J. at 362. Accordingly, we find the senior defense counsel—along with Appellant's unchallenged area defense counsel—competently represented Appellant. Appellant's senior defense counsel was presumed to be competent and Appellant failed to overcome that presumption.[11] Moreover, Appellant failed to establish prejudice as we find no reasonable probability, given the record of this case and Appellant's specific allegations of ineffective assistance of counsel, that Appellant would have pleaded not guilty and insisted on going to trial. Consequently, Appellant's ineffective assistance of counsel claim cannot prevail; Appellant cannot demonstrate (1) that his senior defense counsel's performance was deficient and (2) that any deficiency resulted in prejudice.

## D. Post-trial Confinement Conditions

After trial, Appellant served a total of 74 days confinement in a local civilian confinement facility. During Appellant's confinement processing, a military confinement official explained the civilian confinement facility rules to Appellant and provided Appellant the time to review the facility's prisoner handbook. The military official also informed Appellant that any requests concerning confinement conditions must be submitted in writing or digitally through the civilian confinement facility's kiosks.

Pursuant to the base's memorandum of agreement with the civilian confinement facility, Appellant was placed in a single-person cell in order to avoid any commingling with foreign nationals and other servicemembers in pretrial confinement. However, if another military member shared Appellant's classification, Appellant would have been permitted to commingle with that military prisoner.

---

[10] Having applied the principles announced in *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997), and considered the entire record of Appellant's trial, including a guilty plea during which Appellant expressed his satisfaction with trial defense counsel, we find we can resolve the issues raised by Appellant without additional fact-finding.

[11] In addition to the specific claims identified in this opinion, we considered all other ineffective assistance of counsel claims raised by Appellant in his declarations and brief pursuant to *Grostefon*, 12 M.J. 431. We reject those remaining claims, which neither require additional analysis nor warrant relief. *See Matias*, 25 M.J. at 363.

Appellant was provided the civilian confinement facility uniform provided to all prisoners. Appellant's cell had two windows and contained two bunk-beds, a desk, a stool, and a standard toilet and sink. Appellant was afforded day room, recreation, and shower access for two hours, four times per week. Appellant was served standard meals.

The civilian confinement facility denied Appellant access to materials Appellant packed in preparation for confinement, as such items were considered contraband. Furthermore, Appellant did not have money in his inmate account. However, he was issued basic hygienic supplies and comfort items at no cost. Pencils and toothbrushes were also available to indigent inmates on request.

Appellant could request phone access throughout the day, with access limited by scheduling constraints and consideration for other inmates. Inmates had to pay a fixed rate for phone calls and individual calls were limited to 20 minutes. However, Appellant could coordinate free phone calls to his attorneys and authorized Air Force officials. Clergy visits and religious books were available to Appellant upon request.

A military confinement official visited Appellant at the civilian confinement facility. Appellant lodged only one official complaint or grievance—he was unable to contact his senior defense counsel.

Although Appellant submitted no other formal complaints or grievances with the Air Force or civilian confinement facility, he now alleges on appeal that his post-trial confinement conditions warrant meaningful sentence relief. In general, Appellant asserts he was placed in solitary confinement and denied the following: access to his defense counsel; access to materials he packed for confinement; access to writing materials; and "any type of communication with family, friends, and employers." Appellant further maintains, "[d]espite [his] request, diminishing physical well-being, and degrading mental health, Appellant was provided insufficient access to religious materials, religious services, and mental healthcare."

We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as we find correct in law and fact and determine, on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). In *Gay*, this court invoked Article 66(c) to grant the appellant sentencing relief even in the absence of cruel or unusual punishment in violation of the Eighth Amendment, U.S. Const. amend. VIII, and Article 55, UCMJ, 10 U.S.C. § 855. *United States v. Gay*, 74 M.J. 736, 743 (A.F. Ct. Crim. App. 2015). The Court of Appeals for the Armed Forces (CAAF) held that this court did not abuse its discretion in doing so. *United States v. Gay*, 75 M.J. 264, 269 (C.A.A.F. 2016). However, the CAAF noted that *Gay* in-

volved unique facts driven by legal errors in the post-trial process that included both a violation of the appellant's rights under Article 12, UCMJ, 10 U.S.C. § 812, and the ordering of solitary confinement by an Air Force official where an alternative solution was available. *Id.* Significantly, the CAAF emphasized, "[i]n reaching this conclusion, we do not recognize unlimited authority of the Courts of Criminal Appeals to grant sentence appropriateness relief for any conditions of post-trial confinement of which they disapprove." *Id.*

While we have granted sentence relief based upon conditions of post-trial confinement where a legal deficiency existed, we are not a clearing house for post-trial confinement complaints or grievances. *See id.* Only in very rare circumstances do we anticipate granting sentence relief when there is no violation of the Eighth Amendment or Article 55, UCMJ. *United States v. Milner*, No. ACM S32338, 2017 CCA LEXIS 84, at *13 (A.F. Ct. Crim. App. 7 Feb. 2017) (unpub. op.); *United States v. Garcia*, No. ACM 38814, 2016 CCA LEXIS 490, at *14 (A.F. Ct. Crim. App. 16 Aug. 2016) (unpub. op.); *cf. United States v. Nerad*, 69 M.J. 138, 145–48 (C.A.A.F. 2010) (holding that despite our significant discretion in reviewing the appropriateness of a sentence, this court may not engage in acts of clemency). This case does not present such circumstances.[12]

Moreover, Appellant's case does not present any evidence to suggest he attempted to utilize any grievance process to address the complaints he now puts forward. The CAAF emphasized, "A prisoner must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions." *United States v. Wise*, 64 M.J. 468, 469 (C.A.A.F. 2007). This requirement "promot[es] resolution of grievances at the lowest possible level [and ensures] that an adequate record has been developed [to aid appellate review]." *Id.* at 471 (quoting *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)). An appellant must show that "absent some unusual or egregious circumstance . . . he has exhausted the prisoner-grievance system [in his detention facility] and that he has petitioned for relief under Article 138." *Id.* (quoting *United States v. White*, 54 M.J. 469, 472 (C.A.A.F. 2001)). Appellant failed to make such a showing.

---

[12] Although Appellant claimed that the conditions of his post-trial confinement amounted to cruel or unusual punishment in violation of the Eighth Amendment, U.S. CONST. amend. VIII, or Article 55, UCMJ, his brief acknowledges that "Appellant's allegations may not rise to the level of such a violation." We agree that Appellant's allegations do not rise to that "level" and we find no such violation.

Plainly, Appellant's assertions do not warrant the extraordinary use of our Article 66(c) power to grant sentence relief.

### III. CONCLUSION

The findings of guilt and the sentence are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KATHLEEN M. POTTER
Acting Clerk of the Court